UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RONALD TIPTON     )
          )  No. 1:10-cv-84/1:09-cr-86
v.          )  *Judge Mattice*
          )
UNITED STATES OF AMERICA  )

## **MEMORANDUM**

   Defendant Ronald Tipton ("Tipton") has filed a *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Criminal Doc. 25).[1] Tipton pleaded guilty to Count One of a four-count indictment for knowingly, intentionally, and without authority distributing a mixture and substance containing 5 grams or more of a detectable amount of cocaine base, or "crack" in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). The government opposes the § 2255 motion (Criminal Doc. 33).

   Tipton claims his criminal defense attorney rendered ineffective assistance when counsel represented him in his criminal proceeding. Tipton raises the following specific claims:

- Counsel failed to file a notice of appeal;
- Counsel failed to notify him of the government's intent to seek enhancement;
- Counsel failed to object to his criminal history points;
- Counsel failed to argue the Court should treat the guidelines, including the career criminal enhancement as advisory; and
- Counsel failed to argue for a lower sentence based on the crack and cocaine sentencing disparity.

.
   The motion, together with the files and record in this case, conclusively show Tipton is entitled to no relief under 28 U.S.C. § 2255. For the reasons explained below,

---

[1]   Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

the Court has determined a hearing is not necessary and concludes that the § 2255 motion lacks merit and will be **DENIED** (Court Doc. 25).

## I. PROCEDURAL BACKGROUND

On May 27, 2009, a grand jury sitting in the Eastern District of Tennessee, Chattanooga Division, filed a four count indictment charging Tipton with four drug offenses (Criminal Doc. 3). Tipton was charged with distributing a mixture and substance containing 5 grams or more of a detectable amount of cocaine base or crack on or about August 16, 2008, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count One); distributing a mixture containing a detectable amount of cocaine base or crack on or about September 16, 2008, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two); distributing a substance containing a detectable amount of cocaine on or about September 16, 2008, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Three); and distributing a substance containing a detectable amount of cocaine on or about October 10, 2008, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Four). (Criminal Doc. 3).

On August 17, 2009, Tipton, pleaded guilty to Count One of the indictment pursuant to a plea agreement (Criminal Docs. 16-Minute Entry; 17-Plea Agreement). Because the United States filed a notice of enhancement based upon the prior drug felony convictions, the punishment for this offense dictated a mandatory minimum sentence of imprisonment of ten years up to life, a fine of up to $4,000,000.00, at least eight years of supervised release, and a $100 special assessment. In consideration of Tipton's guilty plea, the United States agreed to move the Court at the time of sentencing to dismiss the remaining count(s) against him. The parties agreed the

2

appropriate disposition of this case would be imposition of any lawful term of imprisonment up to the statutory maximum, any lawful fine up to the statutory maximum, any lawful term of supervised release, a special assessment fee as required by law, and the Court may order forfeiture as applicable and restitution as appropriate (Criminal Doc. 17).

Tipton, his attorney Hallie McFadden, and Assistant United States Attorney Scott Winnie signed this plea agreement. The plea agreement indicates that Tipton read the indictment, discussed the charges and possible defenses with his attorney, and understood the crime(s) charged (Criminal Doc. 17, ¶ 3). Further, the plea agreement specifies the punishment for this offense, "[b]ecause the United States has filed a notice of enhancement based upon prior drug felony convictions, [is] imprisonment for a term of not less than ten(10) years up to life; supervised release for at least eight (8) years, a fine of up to $4,000,000; any lawful restitution; and a $100 special assessment." (Criminal Doc. 17, at 2, ¶ 1.c). In addition to agreeing and stipulating to the facts contained in the plea agreement that satisfied the elements of the crime charged, Tipton waived his rights to appeal and collaterally attack the conviction and a sentence imposed within the applicable guideline range except under very limited circumstances (Criminal Doc.. 17 ¶ 13 (a) & (b)).

Tipton was sentenced to 225 months' imprisonment (37 months below his Guidelines range) on November 23, 2009, and judgment was entered on the November 25, 2009 (Criminal Docs. 23—Minute Entry, 24—Judgment). Tipton timely filed the instant § 2255 motion on April 23, 2010 (Criminal Doc. 25).

## II.   STANDARD OF REVIEW

This Court must vacate and set aside a sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255.

When the defendant files a § 2255 motion, he must set forth facts which entitle him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted).  A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit.  *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(citations omitted)(§ 2254 case); *Clemmons v. Souders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion.)   If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside.  *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert denied*, 439 U.S. 988 (1978).   To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceeding

4

that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506; *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Thus, a § 2255 motion may not be used to litigate the issues that should have been presented and decided on direct appeal unless (1) cause is shown for the tardy challenge and (2) actual prejudice resulting from the error is demonstrated. *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Alternatively, a defaulted claim may be raised if a defendant shows that he is actually innocent of the crime. *See Bousley*, 523 U.S. at 622.

## III. FACTS

The undisputed facts underlying Tipton's offenses are summarized in the Presentence Investigation Report ("PSI") prepared by the United States Probation Office:

> 8. On August 16, 2008, a Confidential Informant (CI) met law enforcement officers at a secure location in South Pittsburg, Tennessee. The CI was familiar with Ronald Tipton. On this particular instance, the CI contacted Mr. Tipton and ordered half of an ounce of crack cocaine from Mr. Tipton. The CI was then provided $500 and a digital recorder to monitor the transaction. The CI and his/her vehicle was [sic] searched to ensure no contraband was present. Authorities followed the CI to Ronald Tipton's residence which is located at 218 Oak Avenue in South Pittsburg, Tennessee. After approximately 10 minutes inside the residence, the CI entered his/her vehicle and drove back to the secure location. Upon meeting with the CI, officers recovered crack cocaine which had been purchased from Ronald Tipton. The substance was submitted to the Tennessee Bureau of Investigation Laboratory and was determined to be 7.4 grams of crack cocaine.

9.      On September 15, 2008, the same Confidential Informant (CI) as mentioned previously met law enforcement officers at a secure location in South Pittsburg, Tennessee.  The CI made a cellular telephone call to Ronald Tipton.  On this particular instance, the CI contacted Mr. Tipton and wanted to order an ounce or half of an ounce of crack cocaine.  Mr. Tipton advised the CI that all he could sell was one half ounce of powder cocaine.  The CI was then provided $500 and a digital recorder to monitor the transaction.  The CI and his/her vehicle was [sic] searched to ensure no contraband was present.  Authorities followed the CI to Ronald Tipton's residence.  The CI entered the defendant's residence and then returned to his/her vehicle to drive back to the secure location.  Upon meeting with the CI, officers recovered crack cocaine which had been purchased from Ronald Tipton and $20.  According to the CI, Mr. Tipton had only charged $480 for the cocaine that was purchased because half of it was powder cocaine and the other half was crack cocaine.  The substance was submitted to the Tennessee Bureau of Investigation Laboratory and was determined to be 4.9 grams of crack cocaine and 7.9 grams of powder cocaine.

10.     On October 10, 2008, the CI met with law enforcement at a secure location in South Pittsburg, Tennessee.  The CI ordered a half of an ounce of powder cocaine from Mr. Tipton.  Authorities provided the CI with $480 in confidential funds and a digital recorder.  In addition, a camera system was placed inside the CI's vehicle which recorded both video and audio.  The CI traveled to Ronald Tipton's residence.  After approximately 11 minutes, the CI left the defendant's residence to meet back at the original meeting location.  The substance was submitted to the Tennessee Bureau of Investigation Laboratory and was determined to be 13.5 grams of powder cocaine.

11.     On January 12, 2009, agents met with the CI at a secure location in New Hope, Tennessee.  The CI was provided $500 to make a controlled purchase of cocaine from Ronald Tipton.  The CI went to Mr. Tipton's residence where the defendant entered the CI's vehicle.  The two then travelled to a clothing store that was owned by Ronald Tipton located at 202 2nd Street in South Pittsburg, Tennessee.  After approximately seven minutes, officers observed the CI and Mr. Tipton leave the store and travel back to the defendant's residence.  At the residence, Mr. Tipton exited the vehicle.  The CI then returned to the original meeting location.  At the location, the CI returned the $500 to officers and some clothing and shoes that the CI had acquired from Mr. Tipton at the clothing store. Officers were advised that Ronald Tipton did not have any cocaine to sell because he was waiting for his son, Rashad Tipton, to get out of jail.  After reviewing the various tape recordings, Ronald Tipton could be heard talking about drug activity taking place in South Pittsburg, Tennessee.  He

6

could also be heard saying that his son, Rashad Tipton, had a "hook up" and that he was waiting for Rashad Tipton to be released from custody before he started distributing any cocaine.

(PSI, at 3-4).

## IV.  ANALYSIS

The Court discerns that Tipton raises five alleged instances of ineffective assistance of counsel in his § 2255 motion.  Specifically, Tipton claims that counsel failed to filed an appeal; notify him the government was seeking to enhance his sentence; object to his criminal history points; argue the guidelines, including the career offender enhancement, should be treated as advisory; and argue the crack/cocaine disparity.  After analyzing the applicable law, the Court will address the allegations in the order raised by Tipton.

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. This right extends beyond the mere presence of counsel to include "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish a claim of ineffective assistance, Tipton must demonstrate two essential elements: (1) that counsel's performance was deficient, that is, below the standard of competence expected of attorneys in criminal cases; and (2) that counsel's deficient performance prejudiced the defense, i.e. deprived the defendant of a fair proceeding, rendering the outcome of the proceeding unreliable.  *Id.* at 687-88.

With regard to plea proceedings, Tipton must show that but for counsel's deficient performance, he would not have pleaded guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate a reasonable probability that he would have gone to trial,

7

a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir.1995). Under *Strickland,* review should be deferential and maintain a strong presumption in favor of finding counsel's conduct within the wide permissible range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

As an initial matter, the Court observes that Tipton has failed to meet the prejudice prong as to any of his claims because he never alleges that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. Rather, Tipton requests the Court to reinstate his right to appeal or resentence him to 120 months. Furthermore, as explained below, Tipton has failed to demonstrate counsel was ineffective.

## A.    Direct Appeal

Tipton alleges the following:

> The Petitioner gave verbal and written instruction to his appointed counsel to appeal his sentence based on several issues of concern. The initial verbal instruction was in the courtroom immediately after the sentence was imposed by the Court. To verify that counsel was filing notice of appeal, Petitioner sent a letter directly to counsel from the detention center within days of the sentencing hearing. No response or further communication was received from counsel. Petitioner attempted to follow-up with the assistance of his spouse who made repeated phone calls to counsel asking for information on the filing of an appeal. Counsel was evasive with the spouse and never confirmed or denied that appeal was being prepared.

(Criminal Doc. 26).

With its response, the government submits the sworn affidavit of Tipton's criminal defense attorney, Hallie H. McFadden (Criminal Doc. 33-1). Counsel avers, *inter alia,* the following:

> 4.     I met with Mr. Tipton on several occasions before the entry of his guilty plea, and discussed with him the possibility that he would be sentenced as a career offender, based upon information contained in the Pretrial Services Report. I discussed with him the impact of his criminal history on his potential sentence and compared what his sentence would be with and without the career offender enhancement. I also reviewed his plea agreement with him in detail, paragraph by paragraph, as is my standard practice. I explained to him that he was waiving his right to appeal any sentence [that was not above the Guideline range].[2]  Based upon his criminal history, I recommended to Mr. Tipton that he cooperate with investigators in the hopes of obtaining a downward departure for substantial assistance. Mr. Tipton agreed with this strategy and did indeed meet with investigators. Unfortunately, the information he provided did not rise to the level of substantial assistance.
>
> 5.     After receiving the Presentence Investigation Report, I met with Mr. Tipton and reviewed it with him. Since his Guidelines range was enhanced by the career offender provision, I recommended to him that we seek a downward variance. Mr. Tipton agreed and I prepared and filed a motion and supporting memorandum. At sentencing, the Court granted the motion and Mr. Tipton was sentenced to a term of imprisonment of 225 months, a 37-month downward variance from the lower end of the applicable Guideline range of 262 to 327 months. After sentencing, I reminded Mr. Tipton that he had waived his right to appeal his sentence and that he had received a below-Guideline sentence. I also explained to Mr. Tipton's wife on at least three occasions that Mr. Tipton had waived his right to appeal his sentence and that there were no appealable issues in his case. Mr. Tipton decided not to file an appeal and instructed affiant accordingly. At no time during the remaining ten-day period after sentencing within which the defendant was eligible to file a direct appeal did the defendant contact affiant and request that an appeal be filed on his behalf.

(Criminal Doc. 33-1).

---

[2]     Counsel averred, "I explained to him that he was waiving his right to appeal any sentence above the Guideline range." (Criminal Doc. 33-1, ¶ 4). Based on the plea agreement, the plea colloquy, and the remainder of counsel's affidavit, this is undoubtedly a typographical error, as Tipton waived his appellate rights except he retained the right to appeal a sentence imposed above the sentencing guideline range (Criminal Doc. 17, at 8, ¶ 13(a)—Plea Agreement).

9

Initially, the Court notes Tipton waived his right pursue a direct appeal of his conviction and sentence unless his sentence was above the applicable guideline range (Criminal Doc. 17, at 8, ¶ 13(a)). That waiver was contained in the plea agreement signed by petitioner and was specifically acknowledged by him during the Rule 11 hearing (Criminal Doc. 29, at 6-7). It is well established that a criminal defendant may waive any right, even a constitutional right, via a plea agreement, and a waiver provision in a plea agreement is enforceable. *See United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001); *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). Thus, a defendant's informed and voluntary waiver of the right to pursue a direct appeal is enforceable. *See United States v. Nunez,* 223 F.3d 956, 959 (9th Cir. 2000) (enforcing plea waiver of direct appeal); *United States v. Djelevic,* 161 F.3d 104, 107 (2nd Cir. 1998) (same).

If a criminal defendant requests or specifically instructs his counsel to file a direct appeal from a judgment of conviction, and if thereafter, counsel fails to file the appeal, it constitutes ineffective assistance of counsel and is a *per se* violation of the defendant's Sixth Amendment right to counsel, regardless of whether the appeal would have been successful or futile. *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000); *Carrion v. United States,* 107 Fed. Appx. 545, 546-47 (6th Cir. 2004). This line of precedent does not afford any relief to Tipton, however, because, as explained below, the Court finds that although Taylor initially requested counsel to file an appeal, after counsel consulted with him regarding the viability of an appeal, Taylor decided not to pursue an appeal and instructed counsel accordingly

10

The statement by Tipton is vague in that he states he gave counsel "verbal and written instruction" to appeal his sentence on several issues of concern. Tipton states he gave counsel verbal instruction in the courtroom immediately after the sentence was imposed. Yet, he does not specify the content of any such conversation or identify the specific "several issues of concern[]" which he claims he told her to appeal. At one point in his brief he states he identified the next four issues identified in his § 2255 motion. This claim is not credible, as the four issues to which Tipton refers are attacking counsel's performance and such issues were not proper issues to be raised by counsel on direct appeal. In addition, Tipton fails to identify the content of the letter he allegedly sent to counsel instructing her to file an appeal or the date on which it was sent. As Tipton points out, he lacks the verification in the form of certified mailings or other proof that he mailed a letter to counsel. In addition, Tipton has not submitted an affidavit from his spouse in support of his bald allegations.

On the other hand, counsel explains that after sentencing, she and Tipton discussed appealing his sentence, but she reminded Tipton his 225-month sentence was below the Guideline range (a 37-month downward variance from the lower end of the applicable Guideline range of 262 to 327 months); he had waived his right to appeal his sentence; and furthermore, there were no appealable issues. Counsel avers Tipton decided not to file an appeal and instructed her accordingly. Counsel further avers that "at no time during the remaining ten-day period after sentencing within which the defendant was eligible to file a direct appeal did the defendant contact affiant and request that an appeal be filed on his behalf." (Criminal Doc. 33-1). Notably, although Tipton filed a reply to the government's response, he did not file an affidavit or

contradict counsel's averments. Tipton claims his wife is available to testify but failed to provide her affidavit. Rather, he argues the Court must conduct a hearing because he filed his § 2255 under penalty of perjury. The Court disagrees.

First, although Tipton's § 2255 motion was filed under penalty of perjury, the only allegation included in his motion is that counsel was ineffective for failing to file an "appeal brief." (Criminal Doc. 25). Second, although Tipton included argument in his supplemental brief, his brief was not filed under penalty of perjury (Criminal Doc. 26). Third, Tipton has not submitted either a sworn affidavit or a 28 U.S.C. § 1746 declaration under penalty of perjury to rebut and dispute counsel's affidavit. Fourth, although Tipton's reply brief was signed under penalty of perjury, he admits he lacks any verification in the form of certified mailings or other proof to support his contention that he sent counsel a letter requesting her to file an appeal, he does not aver he sent the letter prior to the expiration of the time for filing an appeal, or dispute her averment that "[a]t no time during the remaining ten-day period after sentencing within which the defendant was eligible to file a direct appeal did the defendant contact affiant and request that an appeal be filed on his behalf" (Criminal Doc. 33-1). Finally and more importantly, Tipton does not dispute counsel's averments that although they did discuss filing an appeal after sentencing, after she reminded him he waived his right to appeal his sentence since it was a below-Guideline sentence and he had no appealable issues, he decided not to file an appeal and instructed her accordingly.

Based on these facts and circumstances, including the terms of Tipton's plea agreement and the events that occurred during his rearraignment, the Court finds the affidavit of Attorney McFadden to be completely credible, true, and accurate. Although

it appears Tipton's unsworn allegations in his § 2255 supplemental brief that he "immediately informed counsel in the courtroom that he expressly desired to appeal his sentence[,]" (Criminal Doc. 26, at 4) is accurate, it also appears that Tipton has failed to tell the complete story. Notably, Tipton's allegations fail to describe the conversation he had with counsel regarding an appeal and are unsupported and self-serving. Moreover, he has not denied Counsel's version of the conversation. Counsel's affidavit is credible, factually supported, and undisputed by Tipton. Although Tipton initially told counsel he wanted to pursue an appeal, Tipton fails to explain that a discussion ensured where counsel reminded him that he received a sentence below the guidelines, he waived his right to file an appeal of such a sentence, and he had no appealable issues. Therefore, he ultimately decided not to appeal and instructed counsel accordingly.

In sum, counsel's affidavit is credible, factually supported, and *undisputed* by Tipton. Although Tipton filed a reply under penalty of perjury in response to the government's reply to his § 2255 motion and counsel's affidavit, he does not dispute any of counsel's averments. In addition, counsel's affidavit is more credible than Tipton's factually deficient and self-serving claim that he instructed counsel to file an appeal, and she failed to do so. *See Cummings v. United States,* 84 Fed.Appx. 603, 605 (6th Cir. 2003) ("[T]he district court did not commit clear error by crediting counsel's affidavit, insofar as it indicated that Cummings had not asked him to file an appeal.") *Chang v. United States,* 250 F.3d 79, 81-82, 85 (2d Cir. 2001) (submission of trial counsel's affidavit credibly describing the circumstances concerning appellant's failure to testify after Chang submitted his affidavit claiming counsel would not let him testify was sufficient to dispose of claim without an evidentiary hearing); *Coleman v. United*

*States,* 2009 WL 1393323, at *11 (E.D. Tenn. 2009) (denying an evidentiary hearing and relying upon and giving credit to defense counsel's affidavit that defendant did not request or instruct counsel to file a direct appeal); *Gibson v. United States*, 2007 WL 210417, at *4 (E.D.N.Y. Jan. 25, 2007) (quoting *Castrillo v. Breslin,* 2005 WL 2792399, at *13-14(S.D.N.Y. 2005) ("Whereas here, a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings."). Finally, this claim is contradicted by Tipton's own statement at the plea hearing in which Tipton acknowledged that he had discussed with counsel and understood he was waiving his "right to file a direct appeal of both [his] conviction and sentence" as long as the "sentence is not above a range specified by the Federal Sentencing Guidelines." (Criminal doc. 29, at 6-7).

Accordingly, because Tipton has not demonstrated counsel was ineffective in relation to filing a direct appeal, relief will be **DENIED** on his claim that counsel failed to file a direct appeal.

### B. Knowing, Voluntary Plea

Next, Tipton claims he was not informed that the government filed a notice of sentence enhancement and his plea agreement was written in a "deceptive manner which convinced [him] that he was actually facing a ten to twelve year sentence." (Criminal Doc. 25). Tipton claims the language in the plea agreement that "[b]ecause the United States has filed a notice of enhancement based upon prior drug felony convictions, imprisonment for a term of not less than ten (10) years up to life; . . ." was inadequate to reveal the truthful possibility that his sentencing range would be 262-327

14

months.  In addition, Tipton alleges counsel made repeated assurances that he would be facing a ten to twelve year sentence, but then he claims "[d]efense counsel permitted the government to entice her client to enter a guilty plea with the false promise of the possibility of a ten to twelve year sentence."  (Criminal Doc. 26, at 7).

First, the notice of filing the sentence enhancement information was filed on June 12, 2009, and Tipton did not enter his plea until August 17, 2009 (Criminal Doc. 12−Notice of sentence enhancement; Doc. 16−Minute entry of plea; and Doc. 17−Plea Agreement). The portion of the plea agreement quoted by Tipton clearly informs him that he is facing a sentence of ten years to life.   In addition, the plea agreement signed by Tipton provides that the parties agree the Court may impose any lawful term of imprisonment up to the statutory maximum (Criminal Doc. 17, at 2, ¶2(a)).   Therefore, Tipton was notified he was facing a sentence between ten (10) years and life.

During his change of plea colloquy, the government explained the offense to which Tipton was pleading guilty carried a sentence of not less than ten (10) years to life, and Tipton confirmed under oath that even knowing the potential penalties, he still wanted to plead guilty (Criminal Doc. 29, at 10).  In addition, the Court explained to Tipton that his sentence "could be anywhere within the range" of 10 years to life, and that his actual sentence would not be known until his sentencing hearing (Criminal Doc. 29, at 12).  In addition, the Court clearly informed Tipton that his prior criminal history would be considered when sentencing him (Criminal Doc. 29, at 11).

In addition to that proof, counsel avers she met with Tipton on several occasions before entry of his guilty plea and discussed with him the possibility that he would be sentenced as a career offender based upon information contained in the Pretrial

15

Services Report. She further discussed the impact of his criminal history on his sentence and compared what his sentence would be with and without the career offender enhancement. Based on his criminal history, counsel advised Tipton to cooperate with investigators in the hopes of obtaining a downward departure for substantial assistance. Tipton agreed with that strategy and met with investigators, but his assistance did not rise to the level of substantial assistance (Criminal Doc. 33-1).

After receiving the PSI and seeing Tipton's Guidelines range was enhanced by the career offender provision, counsel recommended and Tipton agreed to seek a downward variance. At sentencing the Court granted the motion, sentencing Tipton to a term of imprisonment of 225 months, a 37-month downward variance from the lower end of the applicable Guideline range of 262 to 327 months.

The record clearly reflects Tipton was advised of the sentence enhancement notice and that he could be sentenced anywhere from ten years to life, in both his plea agreement and rearraignment hearing (Criminal Docs. 17 & 29). Tipton acknowledged his understanding of the range of sentence he was facing under oath (Criminal Doc. 29, at 10). In addition, when asked whether anyone had threatened him or forced him in any way to plead guilty, he responded "No,sir." (Criminal Doc. 29, at 5). When asked whether any government personnel had promised or suggested he'd receive lighter sentence or any other form of leniency if he pleads guilty, he at first replied "yes" but when the Court repeated the question, Tipton responded: "No, sir." (Criminal Doc. 29, at 8). "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). In cases such as this one where "the court has scrupulously followed the required procedure, the defendant is bound by his

statements in response to that court's inquiry." *Baker v. United States,* 781 F.2d 85, 90 (6th Cir. 1986).

Thus, when Tipton entered his guilty plea, he was well aware of the range of sentencing possibilities. Although Tipton was obviously hopeful that his assistance to the government would amount to substantial assistance warranting a departure, apparently to the extent his sentence would be 10-12 years, that hope did not materialize. Unfortunately, an unfulfilled hope does not translate to ineffective assistance of counsel.

Even if counsel did not explain to Tipton that based on his record, he was facing a sentence from 10 years to life, the Court advised Tipton he was facing a sentence of 10 years to life prior to allowing him to enter a guilty plea. Consequently, even if counsel performed deficiently in that regard, Tipton has not demonstrated he suffered any prejudice. First, the Court clearly informed Tipton, and he clearly understood he was facing a sentence of 10 years to life. Second, Tipton has failed to satisfy the second prong of the *Strickland* and *Lockhart* test−"show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. at 58-59. Indeed, in his reply to the government's response to his § 2255 motion, Tipton specifies he is not withdrawing his guilty plea and does not intend to, rather he is seeking a resentencing hearing (Criminal Doc. 34).

In sum, Tipton has failed to overcome the presumption of veracity given to his sworn statements in court, and they reflect he was not enticed into pleading guilty without notice of the government's intent to seek a career criminal enhancement, and

he understood the consequences of his guilty plea.  Accordingly, because Tipton's guilty plea was knowing and voluntary, relief will be **DENIED** on his claim that he was enticed to enter a guilty plea without notice of the government's intent to seek a career criminal enhancement.

### C.    PSI Errors

Tipton claims counsel was ineffective for failing to challenge the calculation of his criminal history points which resulted in him being sentenced based on the inaccurate PSI report.  First, Tipton contends he was incorrectly awarded three points for each of two offenses he pleaded guilty to in February  of 1994,  and for each of two offenses he pleaded guilty to in 1997.  According to Tipton, because he was sentenced on the same day in 1994 for the two 1994 offenses, and the same day in 1997 for the two 1997 offenses, then he should be awarded only 3 points for the 1994 convictions and 3 points for the 1997 convictions.

Tipton is simply incorrect.   United States Sentencing Guideline ("U.S.S.G.") §4A1.2(a)(2) mandates prior sentences are to be "counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."   The PSI reflects Tipton sold drugs on February 11, 1994, and was arrested on that date for the offense (PSI, ¶ 33).   Then on February 24, 1994, Tipton sold drugs and was arrested on that date (PSI, ¶ 34).  Although Tipton was sentenced for both offenses on August 10, 1994, because there was an intervening arrest, § 4A1.2(a)(2) requires those two sentences to be counted separately.  Likewise, the PSI reflects Tipton was arrested

for the first 1997 conviction prior to committing the second offense (PSI, ¶ ¶ 27-28). Consequently, it appears Tipton's criminal history points were correctly calculated.

Nevertheless, this claim lacks merit because Tipton is a career offender and his criminal history points did not impact his sentence. Even if the Court counted the 1994 convictions as one and the 1997 convictions as one, it would not change Tipton's career offender status. Tipton would still have at least two prior controlled substance felony convictions, which is all that is needed to qualify as a career offender. In addition, his instant offense involved a controlled substance offense and he was 18 years or older at the time of the commission of the instant offense. Therefore, he qualified as a career offender within the meaning of U.S.S.G. §4B1.1, and his career offender status resulted in a criminal history category of VI. Thus, even if counsel had objected to Tipton's criminal history points, no relief would have been warranted.

Accordingly, because counsel was not ineffective for failing to object to the number of criminal history points assessed to Tipton, relief will be **DENIED** on this claim.

### D. Career Offender

In his fourth claim, Tipton complains that counsel failed to challenge the "'automatic' utilization" of a criminal history category of VI, based upon his classification as a career offender. Tipton also argues that the Court apparently presumed the criminal history category was mandatory rather than advisory (Criminal Doc. 26). Yet, in his reply to the government's response, Tipton argues he was incorrectly categorized as a career offender. Regardless of what Tipton is actually arguing, counsel did challenge

Case 1:09-cr-00086-HSM-SKL   Document 42   Filed 09/10/13   Page 19 of 22   PageID #: 184

his career offender classification, the Court did consider the Guidelines as advisory, and Tipton was properly classified as a career offender.

First, the Court was well aware the sentencing guidelines calculation in Tipton's PSI report was advisory. Moreover, counsel submitted a sentencing memorandum wherein she cited Sixth Circuit case law explaining the career offender provisions of the sentencing guidelines are advisory and invited the Court to disagree with the career offender guidelines and find that the career offender provisions yielded a greater sentence than necessary to serve the objectives of sentencing. Thus, contrary to Tipton's claim, counsel did argue the Court should not apply the career offender guidelines to Tipton (Criminal Doc. 21). The court, recognizing its authority to depart, did so, sentencing Tipton to a sentence 37 months below his guidelines. Consequently, Tipton is unable to demonstrate he suffered any prejudice.

Accordingly, because Tipton has failed to demonstrate counsel was ineffective, relief on this claim will be **DENIED**.

### E. Crack – Cocaine Disparity

As the Court understands Tipton's last claim, he alleges the sentencing court imposed a sentence based on the sentencing scheme in place at the time of his sentencing, (i.e., 100:1 crack to cocaine ratio) and counsel was ineffective for failing to obtain an explanation as to why the Court did not sentence him "on a one-to-one basis with cocaine." (Criminal Doc. 26).

First of all, Tipton's counsel's performance could not have been "outside the wide range of professionally competent assistance" for failure to request an explanation because the motion for a sentence below the guidelines filed by defense counsel

specifically addressed the issue of the disparity created by the crack cocaine to powder cocaine sentencing ratio, and the Court, in effect, used the 1:1 ratio when sentencing Tipton below the Guidelines range (Criminal Doc. 21).  As previously stated, the Court was well aware of the advisory nature of the Guidelines and its authority to vary from them.  Indeed, the Court sentenced Tipton to a below-Guidelines sentence.

Tipton's guideline range for imprisonment was 262 to 327 months.  In counsel's motion requesting a below guidelines sentence she noted that if Tipton were sentenced based upon a total quantity of 33.7 grams of powder cocaine−the combined weight of the cocaine hydrochloride and crack cocaine purchased from petitioner−rather than 12.3 grams of crack, he would be facing 188 to 245 months imprisonment (Criminal Doc. 21, at 3-4).  The Court considered all arguments made by counsel and 18 U.S.C. § 3553(a) before pronouncing sentence.  Tipton was sentenced to 225 months imprisonment, which falls toward the high end of the guideline range suggested by defense counsel's calculation based on the total amount of drugs involved and treating them as powder cocaine.  Thus, Tipton benefitted from counsel's argument and her failure to request the Court to provide an explanation of the basis of the sentence was not deficient. Moreover, Tipton cannot demonstrate he suffered any prejudice.  First, Tipton benefitted from counsel's advocacy when he received a sentence that was approximately three years below the bottom of the Guidelines range, and second, he does not assert but for counsel's failure he would have insisted on going to trial.  Accordingly, relief is not warranted on this claim.

## V. CONCLUSION

For the reasons set forth above, the Court concludes Tipton is not entitled to any relief under 28 U.S.C. §2255 as his conviction and sentence are not in violation of the Constitution or laws of the United States. A separate judgment will enter **DENYING** Tipton's §2255 motion (Criminal Doc. 25).

An appropriate judgment will enter.

_____/s/ Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE